United States Bankruptcy Court
Northern District of Illinois
Eastern Division

| | |
|---|---|
| In re: | Case No. 17 BK 11697 |
| Arthur B. Adler and Associates, Ltd, | Chapter 7 |
| Debtor. | Judge: Hon. Jack B. Schmetterer |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ON TRUSTEE'S MOTION FOR CIVIL CONTEMPT AND SANCTIONS [DKT. NO. 86]**

This matter came to be heard on the Motion for Civil Contempt and Motion for Sanctions of the Chapter 7 Trustee, David P. Leibowitz ("Trustee"). Trustee sought to hold Arthur B. Adler ("Adler"), the president of the Debtor, Arthur B. Adler and Associates, Ltd. ("Debtor"), in contempt for his violations of the automatic stay, 11 U.S.C. § 362, and for violations of this Court's September 8, 2017 Turnover Order [Dkt. No. 43].

Trial was held on July 9 and 10 on Trustee's Motion. Oral closing argument was heard, and the parties previously submitted proposed findings of fact and conclusions of law.

For the reasons stated below, it is found and held that Adler did willfully violate the automatic bankruptcy stay by his actions and a finding of civil contempt will be entered against him because of those violations.

The Court now makes and enters the following Findings of Fact and Conclusions of Law.

## I. FINDINGS OF FACT

### A. BACKGROUND INFORMATION

Debtor is an Illinois corporation, a law firm which was engaged in the business of retail debt collection. Debtor would collect debts against individuals and small businesses on behalf of its clients. Arthur B. Adler is the President of the Debtor corporation. His wife, Jacquelyn Adler, serves as the corporation's secretary. The Debtor corporation was engaged in the business of debt collection until the Chapter 7 petition filing date, April 13, 2017. At that time, Debtor was actively collecting hundreds of accounts for at least forty clients.

Prior to the petition date, a judgment debtor of one of Debtor's clients, Amy Gregory ("Gregory"), challenged Debtor's collection practices pursuant to the Fair Debt Collection Practices Act. That action was filed in the United States District Court for the Northern District of Illinois as Cas No. 12-CV-7351, titled *Gregory v. Arthur B. Adler and Associates Ltd.* After a jury trial, judgment was entered on April 7, 2016 in favor of the plaintiff, awarding damages of

1

$1,000 for the FDCPA violation. The District Court entered an order on October 3, 2016 awarding Gregory attorneys' fees in the amount of $94,814.64 and costs of $643.30.

On November 16, 2016, Gregory issued a citation to discover assets against JPMorgan Chase Bank ("Chase"). Chase responded to that citation, indicating that it maintained $12,607.35 in a frozen checking account ending in 9319 and an additional 77.08 in the form of a check. The 9319 account was Debtor's Expense Account. The District Court entered an order on December 5, 2016 requiring Chase to turn over $12,684.43 in partial satisfaction of the judgment. On February 22, 2017, Gregory issued a citation to discover assets against the Debtor itself. The District Court held a hearing on the citation on March 17, 2017 and Debtor was given 21 days to respond. Debtor filed for bankruptcy protection one day before the status hearing set on the citation, on April 14, 2017.

Trustee filed the instant Motion for Contempt and Sanctions on March 19, 2018. Trustee accused Adler of directing funds properly belonging to the bankruptcy estate of the Debtor to his and his wife's personal bank accounts. Trustee asserts that as of the petition date, Debtor's schedule B showed only one of the existing nine IOLTA accounts ("IOLTA Client Fund Account #2") at Chase held any money in it, $28,019.33. On September 8, 2017, this Court entered an order requiring Adler to turn over all funds in all of Debtor's accounts, including the IOLTA Client Fund Account #2. On September 14, 2017, Adler delivered a check to Trustee in the amount of $206,073.74, purportedly representing all funds in IOLTA Client Fund Account #2. Given that this was far more than the amount initially scheduled, Trustee moved to examine Debtor's banking records at Chase Bank. The Court granted Trustee's request to examine the Debtor corporation's records at Chase Bank, but denied without prejudice his request to examine the bank records of Adler and his wife.

On November 20, 2017 Adler caused a cashier's check in the amount of $26,811.31 to be issued by SunTrust Bank ("SunTrust"). Adler represented this amount to be funds he had collected from twenty separate accounts of his clients. He did not explain where these funds had originally been deposited, nor what the sources of funds for the cashier's check were. Due to this cashier's check and the information Trustee received in the corporate bank records of the Debtor obtained from Chase, the Court granted Trustee's request to examine the personal bank records of Adler and his wife at both Chase and SunTrust on January 23, 2018 [Dkt. No. 82]. Trustee filed the instant Motion based upon his review of the Debtor corporation, Adler, and his wife's

bank records. The Court entered a scheduling order on the Motion requiring that Adler Respond by April 12, 2018 and setting a status hearing on April 19, 2018.

Adler filed his Response, titled "Arthur Adler's Answer to Motion for Contempt," on April 12, 2018 [Dkt. No. 97]. Adler argued that he had properly turned over the $206,073.74 pursuant to the September 14, 2017 Turnover Order. Adler explained that the additional $26,811.31 cashier's check which was delivered to Trustee represented payments from creditors which continued to arrive at the Debtor's address. Adler asserted that he sent several such checks to the Trustee: a January 3, 2018 check in the amount of $15,848.17, a January 19, 2018 check in the amount of $21,896.48, and a March 5, 2018 check in the amount of $12,930.18 were all sent to Trustee after the payments from creditors arrived at Debtor's address. Adler argued that he had not violated any part of the turnover order because the requirement to turnover "all checks from judgment debtors or third parties in possession of Debtor" was not explicitly prospective. That language in the order, Adler argued, was ambiguous as to his specific responsibilities for incoming funds and thus, he could not be held in civil contempt because he was not clearly and unequivocally notified of the allegedly sanctionable behavior.

Adler further argued that his actions were not a violation of the stay under 11 U.S.C. § 362(a) because the Trustee is not an "individual" who was injured by a willful violation of the stay pursuant to 11 U.S.C. § 362(k)(1). Adler argued that bankruptcy courts may no longer use their equitable powers pursuant to 11 U.S.C. § 105 to take any action which explicitly contravenes the mandate of the Bankruptcy Code. *Law v. Siegel*, 571 U.S. 415, 421 (2014). Adler asserted that this includes awarding damages to non-individual entities harmed by violations of the automatic stay.

Trustee filed his Reply on April 18, 2018 [Dkt. No. 98]. He argued that Adler had been informed in the Motion for Contempt of the portions of the Turnover Order that Trustee contended were violated. Due to the number of violations asserted, Trustee was, at the time his Motion was filed, unable to ascertain whether all the funds deposited in Adler's personal accounts were actually remitted. Moreover, Trustee argued that Adler's contention that the Turnover Order was not "explicitly prospective" is disingenuous and weak as an argument because the clear intention of the Order and the Code itself is that all property of the estate is turned over to the Trustee, an ongoing obligation of Debtor pursuant to 11 U.S.C. § 521(a)(4).

3

Trustee asserts that he cannot even be sure that Adler did in fact turnover all funds in his possession.

Trustee also argued that Adler's assertion that he did not violate the automatic stay is even more specious. As Adler clearly deposited funds constituting property of the estate and property of his clients into his personal accounts, Trustee argued that he facially violated 11 U.S.C. § 362(a)(3) by taking possession of and exercising control over property of the estate. In fact, Trustee noted that Adler did not dispute that he acted in violation of the stay. Instead, Trustee states that Adler only attacked the 11 U.S.C. § 362(a) claim on the basis that as a non-"individual", Trustee cannot be compensated through damages because of the prohibition in 11 U.S.C. § 362(k)(1) and the Supreme Court's decision in *Law v. Siegel*. Trustee argues that Adler's reliance on *Law v. Siegel* is misplaced because that case did not establish conclusively that a Trustee could not recover damages pursuant to a bankruptcy court's equitable powers under 11 U.S.C. § 105. Rather, *Law v. Siegel* only held that a Trustee could not surcharge a debtor's homestead exemption for payment of an administrative expense. As such, argued Trustee, a bankruptcy court is within its discretion to award discretionary damages to a Trustee pursuant to 11 U.S.C. § 105.

At the hearing on April 19, 2018, the Court requested that Adler file a Supplemental Answer to Trustee's Motion, explicitly admitting or denying each of the factual allegations therein. Adler filed this Supplemental Answer on May 2, 2018 [Dkt. No. 106]. Adler denied that he had diverted property of the estate in contravention of the Turnover Order, denied each of the instances in which Trustee asserted that he had deposited client funds into his personal accounts without crediting his clients accounts or turning over money to the Trustee, and denied that he had violated the automatic stay.

The Court entered a Final Pre-Trial Order on May 4, 2018, setting trial only on the violation of the automatic stay and sanctions for July 9, 10, 12 and 23, 2018 at 1:30 p.m. each day and ordering Adler to appear in court on July 9 and 10. Adler did not call any witnesses or submit any exhibits. Trial lasted for only two days and the parties agreed that the dates of July 12 and 23 were not needed.

## B. ADLER'S VIOLATIONS OF THE AUTOMATIC STAY

Trustee's review of Debtor, Adler and his wife's bank records revealed several instances wherein Adler diverted property in which the estate of the Debtor had an interest was diverted to his personal bank account or the bank account of his wife.

On January 11, 2017, Adler deposited or caused to be deposited into his joint checking account (with his wife) ending in 6473 at Chase Bank a check in the amount of $3,500.00, representing funds paid on a debt owed by Tarlissa Hunt to one of the Debtor corporation's clients. (Tr. Exh. 38.) Adler also deposited a check in the amount of $4,000.00 to that same account representing funds paid on a debt owed by Ruben Montoya to one of the Debtor corporation's clients on January 27, 2017. (Tr. Exh. 38.)

On April 5, 2017, Adler deposited or caused to be deposited into his joint checking account (with his wife) ending in 5710 at SunTrust Bank a check in the amount of $2,000.00 representing funds paid on a debt owed by Indrani Joshi to one of the Debtor corporation's clients. (Tr. Exh. 1.)

On April 19, 2017, Adler deposited or caused to be deposited in the 6473 Chase Bank account a check in the amount of $1,000.00 representing funds on a debt owed by Tamara Oluwafemi to one of the Debtor Corporation's clients. (Tr. Exhs. 9 and 10.) On May 19, 2017, Adler deposited in that same account a check in the amount of $1,000.00 representing funds again owed on the debt of Oluwafemi to one of Debtor's clients. (Tr. Exhs. 9 and 10.)

On June 27, 2017, Adler deposited or caused to be deposited in the 6473 Chase Bank account two checks, one in the amount of $44.92 and the other in the amount of $123.60, each representing funds garnished for debts owed to the Debtor corporation's clients. (Tr. Exhs. 13, 14, 15.)

On June 28, 2017, Adler deposited or caused to be deposited in the 6473 Chase Bank account two checks, one in the amount of $823.02 and one in the amount of $192.31, each representing funds garnished for debts owed to the Debtor corporation's clients. (Tr. Exhs. 16 and 17.)

On October 19, 2017, Adler deposited or caused to be deposited in the 6473 Chase Bank account two checks, each in the amount of $600.00, representing funds garnished for debts owed to one of the Debtor corporation's clients. (Tr. Exhs. 18 and 19.)

On October 19, 2017, Adler deposited or caused to be deposited in the 6473 Chase Bank account 17 checks, in the amounts of $88.47, $8.70, $6.72, $17.34, $16.64, $178.70, $258.36, $83.60, $78.57, $40.32, $64.24, $22.14, $57.96, $280.98, $83.10, $182.50, and $162.18, each representing funds garnished for debts owed to one of the Debtor corporation's clients. (Tr. Exhs. 19-26.)

On October 30, 2017, Adler deposited or caused to be deposited in the 6473 Chase Bank account one money order in the amount of $100.00 and four checks of $50.00, $300.00, $178.70 and $169.93, each representing funds garnished for debts owed to one of the Debtor corporation's clients. (Tr. Exhs. 27-29.)

On December 1, 2017, Adler deposited or caused to be deposited in the 6473 Chase Bank account a check in the amount of $5,888.09, representing funds owed to Velocity Investments, LLC, one of the Debtor corporation's clients. (Tr. Exhs. 57 and 58.)

On June 23, 2017, Adler deposited or caused to be deposited in the 5710 SunTrust Bank account a cashier's check in the amount of $1,500.00, representing funds paid on a debt owed by Joseph Calderone to one of the Debtor corporation's clients. (Tr. Exhs. 30 and 31.)

On September 18, 2017, Adler deposited or caused to be deposited in the 5710 SunTrust Bank account three checks, at least two of which – in the amounts of $100.00 and $306.28 – represented funds paid or garnished for debts owed to one or more of the Debtor corporation's clients. (Tr. Exhs. 33 and 34.)

On October 3, 2017, Adler deposited or caused to be deposited in the 5710 SunTrust Bank account a check in the amount of $4,500.00, representing funds paid on a debt owed to one of the Debtor corporation's clients. (Tr. Exhs. 35 and 36.)

On October 4, 2017 after the entry of the Turnover Order, Adler opened an additional bank account at Bank of America, ending in 5189 ("5189 BofA account"), in the Debtor corporation's name using its tax identification number. The Trustee sought, pursuant to Fed. R. Bankr. P. 2004, authority to examine this Bank of America on March 29, 2018 [Dkt. No. 92]. Adler then proceeded to make deposits into the newly opened account.

On November 10, 2017, Adler deposited or caused to be deposited into the 5189 BofA account a check in the amount of $166.24, representing funds garnished for a debt owed to one of the Debtor corporation's clients. (Tr. Exhs. 41 and 41.)

6

On November 16, 2017, Adler deposited or caused to be deposited into the 5189 BofA account three checks in the amounts of $6.72, $178.70, and $90.53, representing funds garnished for debts owed to the Debtor corporation's clients. (Tr. Exhs. 42-44.)

On November 21, 2017, Adler deposited or caused to be deposited into the 5189 BofA account 15 checks in the amounts of $1,000.00, $100.00, $165.27, $1.74, $55.67, $72.19, $72.70, $73.97, $74.27, $74.70, $75.01, $75.83, $81.46, $56.90, and $71.06, each representing funds paid or garnished for debts owed to the Debtor corporation's clients. (Tr. Exh. 45-49.)

In each of these instances discovered by the Trustee, both pre- and post-petition, each deposit contained funds owed to one or more of the Debtor corporation's clients and included fees owed to the bankruptcy estate itself. Adler presented no evidence that any such fees were owed to himself individually rather than to the Debtor corporation with whom the clients contracted.

In addition to the diversion of property of the estate to his personal accounts, Trustee also discovered several instances wherein Adler wrote to garnishees and counsel for judgment debtors, directing them to send checks to his Florida home at 11035 Mill Creek Way #107, Ft. Myers, Florida ("residence"). On April 12, 2017, one day before he filed his petition for Chapter 7 bankruptcy relief, Adler wrote to the garnishment department at Aon Corporation, whose employee, Cynthia Lalond, owed a debt to Debtor corporation's client, Troy Capital, LLC. In that letter, Adler stated that all garnishment payment should be sent to his residence. (Tr. Exh. 55.)

On July 7, 2017, three months after the petition date, Adler wrote to Laura Durham at the Metropolitan Water Reclamation District of Greater Chicago, whose employee, Kathleen Chapman, was a judgment debtor who owed money to Debtor corporation's client, Unifund CCR, LLC. Adler once again requested that all garnishment payments be sent directly to his residence. (Tr. Exh. 52 and 59.)

On August 3, 2017, Kelly Macbeth, General Counsel for Troy Capital, LLC, emailed Trustee stating that although her client had recalled all previous accounts assigned to the Debtor corporation, she received a phone call from her client's new attorneys, the Markoff Law Group, indicating that in April 2017, one of the employers handling a wage garnishment on her client's behalf had been instructed by Adler to send the garnishment payments to him in Florida, rather than to the Markoff Law Group. (Tr. Exh. 69 and 70.)

On January 30, 2018, Adler sent a letter to Michael Fiorentino, counsel for a judgment debtor owing money to Debtor corporation's client, Unifund CCR Partners. In that letter, Adler directed that a settlement payment be directed to his new residence, 11023 Horse Creek Road, Ft. Myers, Florida ("new residence") and that the check be made payable to Arthur B. Adler individually. (Tr. Exh. 53 and 54.) Adler also attempted to settle with judgment debtors on behalf of the Debtor corporation, post-petition. In that same letter to Fiorentino, Adler states that "our client will accept $15,000.00 in full settlement of the judgment obtained." (Tr. Exh. 54.) Adler sent a similar letter to Banco Popular, another of the Debtor corporation's clients, on October 3, 2017. (Tr. Exh. 51.)

Additionally, Adler took fees post-petition which properly belonged to the Debtor's estate. On July 26, 2017, Adler received a $710.00 check made payable to Adler & Associates, Ltd. from Unifund CCR, LLC, a client of the Debtor corporation, which he deposited into the 5710 SunTrust Bank account. (Tr. Exh. 56.) That $710.00 check represented fees earned by the Debtor corporation and was property of the Debtor's estate to be administered by the Trustee.

In March of 2018, Adler sent Trustee a cashier's check for $12,930.18 and a letter explaining that this amount represented "5 remittances that were not previously sent to you. These 5 payments were made prior to the bankruptcy filing and therefore a fee has been taken." (Tr. Exh. 37 and 38.) The original checks had been deposited in Adler's 6473 Chase Bank account between January and March of 2017 having been collected pre-petition, but were not remitted until a year later. Adler did not deduct the fees he believes he was owed until March 2018, when they were sent to the Trustee post-petition.

On August 28, 2017, this Court granted Trustee's Motion to Employ an accountant in the bankruptcy case on the basis that Trustee required an expert to parse through the bank records and trace the numerous transfers [Dkt. No. 34]. Since that time, Trustee states that the accountants have accrued more than $26,000.00 in fees in this case. (Tr. Exh. 60.) Additionally, Trustee states that he himself has accrued fees more than $42,000.00 in fees related to his efforts to obtain the Turnover Order, bank records, and the current litigation related to the Motion for Contempt and Sanctions.

## II. CONCLUSIONS OF LAW

### A. JURISDICTION AND VENUE

Subject matter jurisdiction lies under 28 U.S.C. § 1334. The district court may refer bankruptcy proceedings to a bankruptcy judge under 28 U.S.C. § 157, and this proceeding was thereby referred here by Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue lies under 28 U.S.C. § 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

### B. VIOLATION OF THE AUTOMATIC STAY UNDER 11 U.S.C. § 362(a)

Upon the filing of a bankruptcy petition, the automatic stay arises as a matter of law. 11 U.S.C. § 362(a). Once effective, "the stay prohibits a wide array of actions. . . such as attempts to collect prepetition claims or that otherwise interfere with the property of the estate." *In re DiGregorio*, 458 B.R. 436, 443 (Bankr. N.D. Ill. 2011). This includes, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Pursuant to 11 U.S.C. § 541(a), property of the estate includes, "all legal or equitable interests of the debtor in property as of the commencement of the case." In conjunction with 11 U.S.C. § 542 "the failure of a third party to turn over property of the estate to the trustee or debtor constitutes a violation of the automatic stay." *DiGregorio*, 458 B.R. at 443 (citing *Thompson v. Gen. Motors Acceptance Corp., LLC*, 566 F.3d 699, 703 (7th Cir. 2009)). An "individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees." 11 U.S.C. § 362(k)(1). The party alleging an injury must show that the violation of the automatic stay was "willful." *Thompson*, 566 F.3d at 708. A stay violation is willful when a party, (1) has actual notice of the bankruptcy filing and (2) acts deliberately when it violates the stay. *In re Will*, 303 B.R. 357, 363-54 (Bankr. N.D. Ill. 2003). "A willful violation does not require specific intent to violate the stay; it is sufficient that the creditor takes questionable action despite the awareness of a pending bankruptcy proceeding." *In re Radcliffe*, 563 F.3d 627, 631 (7th Cir. 2009) (citing *Price v. United States (In re Price)*, 42 F.3d 1068 (7th Cir. 1994)).

In some cases, civil contempt arises because of a violation of a court order. However, "[a] violation of the stay is punishable as contempt of court." COLLIER ON BANKRUPTCY ¶ 362.12[2] (Richard Levin & Henry J. Sommer eds., 16th ed. 2010). Courts consider the automatic stay

9

equivalent to a court order, and "[m]ost courts will impose contempt sanctions for a knowing and willful violation of a court order." *Id.*

In the instant case, not all amounts paid to Debtor corporation by judgment debtors represents property of the estate. However, each of the deposits included a percentage fee owed to the estate, and thus the deposits represent property in which the Debtor has an interest pursuant to 11 U.S.C. § 541(a). Thus, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," is a violation of the automatic stay. 11 U.S.C. § 362(a)(3).

Adler's actions undoubtedly violated the clear mandate of 11 U.S.C. § 362(a)(3). Not only did Adler deposit property in which the estate had an interest in his personal bank accounts, sometimes for over a year before remitting those payments to the Trustee. He also directed judgment debtors to directly remit payments to him at his Florida residence, attempted to settle with judgment debtors on behalf of the Debtor corporation post-petition, and apportioned to himself fees from sums that were remitted to his residence before Trustee had the opportunity to administer those funds. In *Thompson*, a Seventh Circuit panel explained that the mere passive possession of the property of the estate be a creditor constituted a violation of 11 U.S.C. § 362(a). 366 F.3d at 702. The opinion explained that, "to hold that 'exercising control' over an asset encompasses only selling or otherwise destroying the asset would not be logical." *Id.*

Although *Thompson* was a Chapter 13 case, the ruling of the Seventh Circuit is clear that even something as simple as, "[h]olding onto an asset, refusing to return it, and otherwise prohibiting a debtor's beneficial use of an asset all fit within this definition." *Id.* Adler unquestionably did more than merely hold assets of the Debtor corporation. He deposited funds in his, apportioned himself fees from some of the funds he deposited before remitting the remaining amount to Trustee, and attempted to settle with judgment debtors on the Debtor corporation's behalf. Adler even opened a bank account using the name and tax identification number of the Debtor corporation post-petition and deposited funds into that account. Any of these actions alone could reasonably be construed as a violation of the automatic stay. Taken together, Adler has repeatedly and flagrantly disregarded the automatic stay. Under the broad definition of "exercising control" espoused by the Seventh Circuit in *Thompson*, clearly Adler has violated 11 U.S.C. § 362(a).

In his defense, Adler insists both that he has since turned over all funds that were remitted to him and that Trustee had an obligation to inform judgment debtors to send all payments to him rather than Adler. Both of these arguments are weak. Adler cites no authority for the proposition that simply remitting the funds he held absolves him of his violations of the automatic stay. Were that the case, any creditor who got caught exercising control over property of the estate would simply return said property and wash their hands of any wrongdoing. But, Adler's conception of civil contempt is incorrect. While it is true that in some cases a party may be held in civil contempt until they are asked to cease some actionor comply with some court order, a party may also be held in civil contempt for discrete violations of court orders (or, in this case, the automatic stay). That is the situation here: although Adler may have returned most or all of the funds in question to Trustee, it is the act of exercising control over property of the estate, in particular after the September 8, 2017 Turnover Order was entered, that gave rise to this finding of civil contempt. Even if Adler had established that Trustee should have made more of an effort to prevent judgment debtors from sending funds to Adler personally, that does not excuse Adler from the consequences of the deliberate actions he chose to take.

Adler's conduct was clearly willful as well. As the Seventh Circuit indicated in *Radcliffe*, "willfulness" does not require specific intent to violate the automatic stay, contrary to Adler's belief. 563 F.3d at 631. It is enough that he take some "questionable action" during the pendency of the bankruptcy. *Id.* As detailed above, the Trustee has made the case that most of Adler's actions during the pendency of this bankruptcy were questionable. That Adler believed he was "assisting the estate by helping to bring in assets of the estate," is unavailing. His conduct was willful because he deliberately took these questionable actions in violation of the automatic stay.

For those reasons, a separate judgment order will be entered in favor of the Trustee concurrently herewith, finding Adler in civil contempt for his violations of the automatic stay.

## C. TRUSTEE'S ABILITY TO RECOVER DAMAGES

Finally, Adler argues that even if he is found to be in civil contempt for violating the automatic stay, the Trustee cannot recover damages. He argues that pursuant to 11 U.S.C. § 362(k)(1) only an "individual" may recover damages for injuries resulting from a stay violation, and because the Trustee is not a natural person, he cannot recover under that provision. *Gordon v. Taylor (In re Taylor)*, 430 B.R. 305, 315 (Bankr. N.D. Ga. 2010) (quoting *Havelock v. Taxel (In re Pace)*, 67 F.3d 187, 192 (9th Cir. 1995)); *see also Paloian v. Grupo Serla S.A. de*

11

*C.V.*, 433 B.R. 19, 40 (N.D. Ill. 2010). Moreover, Adler argues that the court cannot use its equitable powers under 11 U.S.C. § 105(a) to award Trustee damages because doing so would violate the mandate of the Supreme Court in *Law v. Siegel*, 571 U.S. 415, 421 (2014) that a bankruptcy court may not contravene the provisions of the Code through 11 U.S.C. § 105(a).

Adler's conclusion that the Trustee is incapable of recovering damages for the violations of the automatic stay is incorrect. First, the Supreme Court in *Siegel* explicitly stated that a bankruptcy court may not exercise its inherent powers in contravention of the statutory provisions of the Bankruptcy Code. *Siegel*, 571 U.S. at 421. In that case, the Supreme Court determined that a bankruptcy court allowing the surcharge of a debtor's exemption had exceeded its statutory and inherent authority. *Id.* at 422. However, that decision did not strip bankruptcy courts of their authority pursuant to 11 U.S.C. § 105(a). Rather, it merely requires a bankruptcy court to be mindful of the remedies it crafts to avoid contravening the Bankruptcy Code.

It is undisputed that bankruptcy courts "'possess inherent power . . . to sanction 'abusive litigation practices.'"" *Siegel*, 571 U.S. at 420 (quoting *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 375-376. Likewise, the Seventh Circuit has clearly articulated that an award of attorneys' fees in contempt proceedings is at the discretion of the court. *Tranzact Tech., Inc. v. 1Source Worldsite*, 406 F.3d 851, 855 (7th Cir. 2005). Courts in this circuit have repeatedly held that a trustee can recover damages, in the form of costs and attorneys' fees, for ordinary civil contempt. *Paloian*, 433 B.R. at 41 ("[A] bankruptcy court may punish a violation of the automatic stay pursuant to its civil contempt powers codified in §105(a). Thus, the bankruptcy court's award of damages in the exercise of its contempt powers was proper."); *In re Morris Senior Living, LLC*, Nos. 13 C 2457 and 13 C 2064, 2013 WL 5753834, at *11 (N.D. Ill. Oct. 23, 2013); *In re Glenn*, 379 B.R. 760, 764 (Bankr. N.D. Ill. 2007).

There is no justification for Adler's position that a bankruptcy court cannot or should not use its powers pursuant to 11 U.S.C. § 105(a) to award damages to a non-individual entity injured by another party's sanctionable conduct. As recently as March of this year, a bankruptcy court in this circuit held that a non-individual entity could recover reasonable attorneys' fees and expenses resulting from a contempt proceeding under 11 U.S.C. § 105(a). *In re Direct Media Power, Inc.*, 582 B.R. 739 (Bankr. N.D. Ill. 2018). The power of bankruptcy courts to award attorneys' fees and costs in contempt proceedings pursuant to their § 105(a) authority has plainly

not been abrogated by the Supreme Court's decision in *Law v. Siegel*. Therefore, Trustee is entitled to reasonable attorneys' fees and costs in this case.

## CONCLUSION

For the foregoing reasons, Adler will be found to be in civil contempt for his violations of that automatic stay under 11 U.S.C. § 362 by separate order entered concurrently herewith. That order will also set a status date to determine when the parties will be able to attend a further hearing on the issue of damages.

ENTER:

Dated this ___ day of August, 2018

Jack B. Schmetterer
United States Bankruptcy Judge