IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS — EASTERN DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Case No. 17-11697 |
| ARTHUR B. ADLER AND ) | |
| ASSOCIATES, LTD. ) | |
| ) | Chapter 7 |
| Debtor. ) | |
| DAVID P. LEIBOWITZ, trustee for the ) | |
| estate of Arthur B. Adler and Associates, Ltd., ) | |
| ) | Hon. Jack B. Schmetterer |
| Plaintiff, ) | |
| v. ) | Adv. Proc. No. |
| ) | |
| CITIBANK, N.A. ) | |
| ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

David P. Leibowitz ("Plaintiff" or "Trustee"), as Chapter 7 trustee for the estate of Arthur P. Adler and Associates, Ltd. (the "Debtor" or "Associates"), by and through his attorneys, BAUCH & MICHAELS, LLC d/b/a Lakelaw, for his claims for relief against Citibank, N.A. ("Citibank" or the "Defendant"):

### I.   NATURE OF ACTION

1.   The Debtor made transfers of its interests in property to, or for the benefit of, Citibank after the Debtor was sued in a civil action for violations of the Fair Debt Collection Practices Act ("FDCPA"). The Debtor was, and was believed to be by its insiders, insolvent at the time of the transfers. The Debtor received no reasonably equivalent value in exchange for the transfers. The Debtor made the transfers with the actual intent to delay, hinder, and defraud creditors, including to avoid paying the anticipated FDCPA judgment.  Citibank had issued a consumer

credit card to the Debtor's insiders, and the transfers were made in satisfaction of the insiders' personal obligations to Chase Bank. The Trustee seeks to avoid and recover the transfers to the Defendant as an "initial transferee" or party for whose benefit the transfers were made pursuant to Sections 544, 548 and 550 of the Bankruptcy Code and the Illinois Uniform Fraudulent Transfer Act.

## II. JURISDICTION

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157 and 1334, because the proceeding arises under, arises in or is related to a case under the Bankruptcy Code. This is an action pursuant to 11 U.S.C. §§ 544, 548 and 550, applicable non-bankruptcy law, including the Illinois Uniform Fraudulent Transfer Act, 740 ILCS 160/1 *et seq.*, and Fed. R. Bankr. P. 7001(1), (7), and (9) to recover property or money.

3. This is a statutory core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (H) and (O).

4. To the extent that the Bankruptcy Court may not constitutionally or statutorily enter a final judgment on any counts of the complaint, the Trustee consents to the Bankruptcy Court's entry of final judgment on all counts. To the extent that the Defendant does not consent to the entry of final judgment on all or some counts of the complaint, the Trustee consents to the Bankruptcy Court entering proposed findings of fact and conclusions of law for transmittal to the United States District Court for the Northern District of Illinois, Eastern Division, on any counts upon which it is determined that the Bankruptcy Court may not enter final judgment.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1409.

### III.   PARTIES

6.   The Trustee is the duly appointed and acting trustee in this case under Chapter 7 of the United States Bankruptcy Code.

7.   The Debtor is an Illinois corporation.  Until it filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on April 13, 2017 (the "Petition Date"), the Debtor was engaged in the practice of law. Arthur B. Adler ("Arthur") was the president, director, and sole shareholder of the Debtor. Jacquelyn Adler ("Jacquelyn"), Arthur's wife, was the secretary of the Debtor.

8.   Citibank is a national banking association with its principal place of business in New York, New York.

### IV.   HISTORICAL BACKGROUND

A.   THE DEBTOR'S ASSETS AND OPERATIONS.

9.   On September 4, 1986, Arthur organized the Debtor to operate as a law firm. Until the Petition Date, the Debtor was engaged in the business of retail debt collection—the volume collection of debts from individuals and small businesses. As of the Petition Date, the Debtor was actively collecting hundreds of accounts for at least forty clients.

10.   The Debtor entered into "contingent fee" agreements with its clients. Under these agreements, the Debtor earned and retained a percentage of any amounts it recovered from the clients' account debtors.

11.   The Debtor maintained a series of deposit accounts in the operation of the business. First, the Debtor maintained a series of client trust deposit accounts at Chase Bank, certain of which were dedicated to a single client, and at least one of

3

which contained commingled funds for multiple clients (collectively the "Trust Accounts").

12. Second, the Debtor also maintained a deposit account at Chase Bank, account no. 9319, that served as its operating account (the "Operating Account"). The Debtor used the Operating Account to pay its ordinary operating expenses, including rent, utilities, and payroll. With respect to his services, Arthur received a salary from the Debtor that was processed through a payroll service and funded from the Operating Account.

13. The Debtor would typically deposit client collections into one of the Trust Accounts. Thereafter, the Debtor would transfer its earned fee from the Trust Accounts to the Operating Account.

14. The Debtor was insolvent since at least December 31, 2013. The Debtor's primary assets were cash in the Operating Account, earned fees held in the Trust Accounts, loans to Arthur, and office furniture, fixtures, and equipment ("FF&E"). The Debtor's cash assets were minimal, and cash remaining after the payment of current operating expenses was contemporaneously distributed to Arthur and Jacquelyn in the form of distributions. The funds in the Trust Accounts were property of the clients, not the Debtor. The loans to Arthur were related party transactions, the repayment of which depended upon the ability of the Debtor to make distributions to Arthur. The FF&E was fully depreciated and had only a nominal realizable value if sold. An analysis of the fair value of the Debtor's assets and liabilities at various

anniversary dates in the four years preceding the Petition Date is attached as Exhibit 1.

**B.    THE FDCPA ACTION AND ARTHUR'S SCHEME TO DELAY, HINDER AND DEFRAUD CREDITORS.**

15.    On September 13, 2012, Amy Gregory ("Gregory"), an account debtor of one of the Debtor's clients, filed a civil action in the United States District Court for the Northern District of Illinois as Case No. 12-CV-7351, titled *Gregory v. Regional Adjustment Bureau and Arthur B. Adler and Associates, Ltd.* (the "FDCPA Action") challenging the Debtor's collection practices and alleging that the Debtor had violated the FDCPA.

16.    During the pendency of the FDCPA Action, while the Debtor was insolvent, and in the four years preceding and continuing after the Petition Date, Arthur caused the Debtor to transfer the Debtor's interest in property to or for the benefit of Arthur and Jacquelyn. These transfers were in the form of the following: transfers from the Operating Account or Trust Accounts to Arthur and Jacquelyn's personal deposit accounts at Chase Bank, account no. 6473 ("Chase 6473"); SunTrust Bank, account no. 5710 ("SunTrust 5710"); or Bank of America account no. 5189 ("BOA 5189") (collectively, the "Personal Accounts") and to Arthur and Jacquelyn's personal credit card accounts with American Express, including account no. 4007; Chase Card Services, including account nos. 0197 and 5776; Citicard, including account nos. 1230 and 8073; and, Discover Card, including account no. 7642 (collectively, the "Personal Credit Cards") in satisfaction of Arthur and Jacquelyn's

5

personal obligations to the credit card issuers; or transfers of client collections checks or other remittances directly to the Personal Accounts.

17. As described above, Arthur and Jacquelyn had one or more consumer revolving credit agreements with Citibank pursuant to which Citibank issued credit cards. Arthur and Jacqueline used the Citibank credit cards to incur debt primarily for personal and household purposes unrelated to the operation of the Debtor.

18. On April 7, 2016, after a jury trial in the FDCPA Action, the District Court entered judgment awarding Gregory damages in the statutory amount of $1,000 for violation of the FDCPA. On October 3, 2016, the District Court entered an order allowing attorneys' fees in favor of Gregory's attorneys and against the Debtor in the amount of $94,814.64 plus costs of $643.30 [ECF Nos. 93 and 119].

19. On November 16, 2016, Gregory issued a third-party citation to discover assets of the Debtor to Chase Bank [ECF. No. 120]. Chase Bank responded to the citation, stating that it maintained a balance of (and had frozen) $12,607.35 in the Operating Account and an additional $77.08 represented by a check. [ECF Nos. 122 (December 2, 2016) and 124 (December 19, 2016)]. On December 5, 2016, the District Court entered an Order for Turnover of Funds, requiring Chase Bank to turn over the $12,684.43 to Gregory's counsel in partial satisfaction of the judgment. [ECF no. 123].

20. On February 22, 2017, after garnishing the foregoing funds in the Operating Account, Gregory issued a citation to discover assets to the Debtor. (See District Court ECF No. 125, February 22, 2017). After the citation hearing was held

on March 17, 2017, the District Court ordered the Debtor to respond to the citation within 21 days and set a status hearing for April 14, 2017.

21. Prior to the Petition Date and after the issuance of the citations and the garnishment of the Operating Account—and in order to evade the citations and avoid any further garnishment of Debtor's funds—Arthur began depositing the Debtor's client collections checks or other remittances directly to the Personal Accounts and transferred property in which the Debtor had an interest from the Trust Accounts directly to the Personal Accounts.

22. The date, amount, source, and destination of the Debtor's transfers to or for the benefit of Citibank during the two years preceding the Petition Date are set forth on the attached Exhibit 2.

23. The date, amount, source, and destination of the Debtor's transfers to or for the benefit of Citibank during the four years preceding the Petition Date are set forth on the attached Exhibit 3.

C. **THE CHAPTER 7 BANKRUPTCY CASE AND POSTPETITION TRANSFERS.**

24. On April 13, 2017, the Debtor filed its voluntary petition under Chapter 7 of the United States Bankruptcy Code.

25. Subsequent to the Petition Date, the Debtor continued to transfer its interest in property to, or for the benefit of, Arthur and Jacquelyn, primarily by transferring funds from the Trust accounts or diverting client collection checks and remittances directly to the Personal Accounts.

26. On August 20, 2018 and March 15, 2019, this Court entered its orders determining that Arthur had violated the automatic stay by having the Debtor

transfer funds from the Trust Accounts and client collections checks and remittances to the Personal Accounts after the Petition Date and awarded the Trustee damages. [ECF Nos. 158, 160 and 183].

### COUNT I – FRAUDULENT TRANSFER - 11 U.S.C. § 548(a)(1) (A)

27. The Trustee repeats and realleges paragraphs 1 through 26 of this Complaint as though fully set forth herein.

28. The Debtor made certain transfers of its interest in property to, or for the benefit of, Citibank, as described in Exhibit 2, on or within two years of the Petition Date, with the actual intent to hinder, delay, or defraud entities to which the Debtor was or became, on or after the dates such transfers were made, indebted.

29. With respect to the transfers:

(1) The transfers were to, or for the benefit of, insiders: Arthur and Jacquelyn are insiders of the Debtor and either were the initial transferees, or benefited from the transfers to the extent that the transfers satisfied their personal obligations (which were not obligations of the Debtor and as to which the Debtor received no value);

(2) The transfers were concealed in some instances by Arthur's diversion of checks intended for the Debtor to the Personal Accounts or having the Debtor make the transfers to third-party creditors of the insiders;

(3) Before the transfers were made, the Debtor had been sued or threatened with suit: The FDCPA Action was filed before the transfers were made

8

and the Debtor continued to make the transfers after suffering adverse rulings in the FDCPA Action;

(4) The transfers were of substantially all of the Debtor's assets: The transfers to or for the benefit of Arthur and Jacquelyn, in the aggregate, constituted all of the Debtor's liquid assets;

(5) The Debtor removed or concealed assets: in some cases, the Debtor removed assets from the State of Illinois by transferring them to out of state creditors of Arthur and Jacquelyn or to out of state deposit accounts, such as SunTrust Bank;

(6) The value of the consideration received by the Debtor was not reasonably equivalent to the value of the assets transferred: Arthur received a salary from the Debtor for his services, and Arthur and Jacquelyn provided no additional services to the Debtor of any significant value for which they were entitled to additional compensation; the Debtor received no value from the Defendant for the transfers;

(7) The Debtor was insolvent or became insolvent shortly after the transfers were made: The Debtor's assets never had a fair value in excess of the fair value of the Debtor's ordinary course and the FDCPA Action liabilities, and Arthur and Jacquelyn believed that the Debtor was insolvent at the time of each of the transfers; and

(8) The transfers occurred shortly before or shortly after a substantial debt was incurred: The transfers commenced after the filing of the FDCPA Action in September of 2012 and continued through and after the entry of judgment in the FDCPA action and the Petition Date.

WHEREFORE, the Trustee prays that this Court enter judgment:

A. Avoiding the transfers of property made by the Debtor to the Defendant and awarding the Trustee recovery of an amount equal to the value of such property from the Defendant pursuant to 11 U.S.C. §§ 548 and 550;

B. Awarding prejudgment interest on such amounts and costs; and

C. Awarding such other relief as is appropriate.

### COUNT II– FRAUDULENT TRANSFER
### 11 U.S.C. § 548(a)(1)(B)

30. The Trustee repeats and realleges paragraphs 1 through 26 of this Complaint as though fully set forth herein.

31. The Debtor made certain of the transfers of its interest in property to or for the benefit of Citibank, as described in Exhibit 2, on or within two years of the Petition Date.

32. The Debtor received less than a reasonably equivalent value in exchange for such transfers. Arthur received a salary from the Debtor for his services, and Arthur and Jacquelyn provided no additional services to the Debtor of any significant value for which they were entitled to additional compensation; the Debtor received no value from the Defendant for the transfers.

10

33.     The Debtor was insolvent on the date that such transfers were made, or became insolvent as a result of such transfers; the Debtor was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; or the Debtor intended to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured. The Debtor's assets never had a fair value in excess of the fair value of the Debtor's ordinary course and the FDCPA Action liabilities; the Debtor knew that it did not have sufficient capital to satisfy the probable FDCPA Action liabilities; and the Debtor knew that it had incurred debts with respect to the Class Action and Settlement Agreement that were beyond its ability to pay.

WHEREFORE, the Trustee prays that this Court enter judgment:

A.      Avoiding the transfers of property made by the Debtor to Citibank and awarding the Trustee recovery of an amount equal to the value of such property from the Defendant pursuant to 11 U.S.C. §§ 548 and 550;

B.      Awarding prejudgment interest on such amounts and costs; and

C.      Awarding such other relief as is appropriate.

### COUNT III – FRAUDULENT TRANSFER
### 740 ILCS 160/5(a)(1)

34.     The Trustee repeats and realleges paragraphs 1 through 26 of this Complaint as though fully set forth herein.

35.     The Debtor made transfers of property, as described in Exhibit 3, to or for the benefit of Citibank, on or within four years of the Petition Date, with the actual

11

intent to hinder, delay or defraud entities to which the Debtor was indebted or became indebted, on or after the dates such transfers were made.

36. There are creditors of the Debtor's estate whose claims arose before or after the transfers were made.

37. With respect to the transfers:

(1) The transfers were to, or for the benefit of, insiders: Arthur and Jacquelyn are insiders of the Debtor and either were the initial transferees, or benefited from the transfers to the extent that the transfers satisfied their personal obligations (which were not obligations of the Debtor and as to which the Debtor received no value);

(2) The transfers were concealed in some instances by Arthur's diversion of checks intended for the Debtor to the Personal Accounts or having the Debtor make the transfers to third-party creditors of the insiders;

(3) Before the transfers were made, the Debtor had been sued or threatened with suit: The FDCPA Action was filed before the transfers were made and the Debtor continued to make the transfers after suffering adverse rulings in the FDCPA Action;

(4) The transfers were of substantially all of the Debtor's assets: The transfers to or for the benefit of insiders, in the aggregate, constituted all of the Debtor's remaining assets;

(5) The Debtor removed or concealed assets: in some cases, the Debtor removed assets from the State of Illinois by transferring them to out of

state creditors of insiders or to out of state deposit accounts, such as SunTrust Bank;

(6) The value of the consideration received by the Debtor was not reasonably equivalent to the value of the assets transferred: Arthur received a salary from the Debtor for his services and Arthur and Jacquelyn provided no additional services to the Debtor of any significant value for which they were entitled to additional compensation; the Debtor received no value from Defendant for the transfers;

(7) The Debtor was insolvent or became insolvent shortly after the transfers were made: The Debtor's assets never had a fair value in excess of the fair value of the Debtor's ordinary course and the FDCPA Action liabilities, and Arthur and Jacquelyn believed that the Debtor was insolvent at the time of each of the transfers; and

(8) The transfers occurred shortly before or shortly after a substantial debt was incurred: The transfers commenced after the filing of the FDCPA Action in September of 2012 and continued through and after the entry of judgment in the FDCPA Action and Petition Date.

WHEREFORE, the Trustee prays that this Court enter judgment:

A. Avoiding the transfers of property made by the Debtor to the Defendant and awarding Trustee recovery of an amount equal to the value of such property from the Defendant pursuant to 11 U.S.C. §§ 544(b) and 550 and 740 ILCS 160/5(a)(1);

13

B.    Awarding prejudgment interest on such amounts and costs; and

C.    Awarding such other relief as is appropriate.

**COUNT IV – FRAUDULENT TRANSFER**
**740 ILCS 160/5(a)(2)**

38.    The Trustee repeats and realleges paragraphs 1 through 26 of this Complaint as though fully set forth herein.

39.    The Debtor made transfers of property, as described in Exhibit 3, to or for the benefit of Citibank on or within four years of the Petition Date.

40.    The Debtor received less than a reasonably equivalent value in exchange for such transfers.

41.    The Debtor was insolvent on the date that such transfers were made, or became insolvent as a result of such transfers; the Debtor was engaged in business or a transaction, or was about to engage in business or a transaction for which any property remaining with the Debtor was an unreasonably small capital; or the Debtor intended to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

42.    There are creditors of the Debtor's estate whose claims arose before or after the transfers were made. The FDCPA plaintiff and counsel hold allowable claims that arose no later than the filing of the FDCPA Action.

WHEREFORE, the Trustee prays that this court enter judgment:

A.    Avoiding the transfers of property made by the Debtor to the Defendant and awarding Trustee recovery of an amount equal to the value of such property from the Defendant pursuant to 11 U.S.C. §§ 548 and 550 and 740 ILCS 160/5(a)(2);

14

B.  Awarding prejudgment interest on such amounts and costs; and

D.  Awarding such other relief as is appropriate.

### COUNT V – FRAUDULENT TRANSFER
### 740 ILCS 160/6(a)

43. The Trustee repeats and realleges the allegations in paragraphs 1 through 26 of this Complaint as though fully set forth herein.

44. On or within four years of the Petition Date, the Debtor made transfers of property, as described in Exhibit 3, to or for the benefit of Arthur and Jacquelyn.

45. There are creditors of the Debtor's estate whose claims arose before the transfers were made. The FDCPA plaintiff and counsel hold allowable claims that arose no later than the filing of the FDCPA Action.

46. The Debtor made the transfers without receiving a reasonably equivalent value in exchange for the transfers.

47. The Debtor was insolvent at the time of the transfers or became insolvent as a result of the transfers.

WHEREFORE, the Trustee prays that this Court enter judgment:

A.  Avoiding the transfers of property made by the Debtor to Citibank and awarding Trustee recovery of an amount equal to the value of the property from pursuant to 11 U.S.C. §§ 544(b) and 550 and 740 ILCS 160/6(a).

B.  Awarding prejudgment interest on such amounts and costs; and

C.  Awarding such other relief as is appropriate.

| | |
|---|---|
| Dated: April 5, 2019 | DAVID P. LEIBOWITZ, Chapter 7 Trustee |
| | By: /s/ Paul M. Bauch |
| | One of His Attorneys |

Paul M. Bauch (ARDC #6196619)
Carolina Y. Sales (ARDC #6287277)
BAUCH & MICHAELS, LLC D/B/A LAKELAW
53 W. Jackson Blvd., Suite 1115
Chicago, Illinois 60604
(312) 588-5000
Fax (312) 427-5709
pbauch@lakelaw.com